315.05.7 Central Grocers, Inc. Counsel, you may proceed. May it please the Court, Counsel, my name is Rosario Zavala on behalf of the defendant at Belmont Central Grocers, Inc. There are four issues before this Court, but without specific questions from the panel, I would rely on my brief with regard to the first three issues regarding the average weekly wage, the amount of the TTD and the penalties, and concentrate my argument to remove one of those from the list. Why penalties? Why was that included? You're saying as the appellant that the finding of no penalties was correct. Why is that included as an issue on appeal? It was brought up in the decision in the, well, it was brought up in the brief of the appellee. So it was in the reply brief. You're the appellant. You raised it in your original brief. I ask you to, that I agree that there was no penalties to be awarded because the decision was correct. I mean, there was reasonable reliance on medical opinions, and also there was not a specific finding, there was a consistent dispute with regard to the ability to return to work. Even though there was a concession with regard to the treatment itself. Was there a cross appeal? I'm just trying to figure out why are we addressing penalties here. Why did you raise that issue? Probably due to the cross appeals in the circuit court before and the fact that there was, that issue had been raised. I probably shouldn't have put it in the original brief. It should have been in the reply when it was brought up in the response. Well, the appellee's brief is just addressing what you raised in your original brief. Well, I think with regard to, not with regard to penalties, I think they were addressing a payment that was made stating that that payment would concede that the TTD should have been owed when I don't think that's correct. So maybe spend your time on the other issues other than penalties. Okay. I'd like to start with the last issue, which is whether or not the statute requires an impairment report in order to determine the permanent partial disability in a case. I'd like to start with the portion of that statute which I think we agree on, which is Paragraph B of Section 8.1B. In Paragraph B, it says in determining the level of permanent partial disability, the commission shall use the following factors and the factors listed are number one is the impairment report, the age, the occupation, the earning capacity, as well as the evidence of disability in the report. That paragraph goes on to further state that no single factor shall be determinative of the permanent partial disability. I think we agree that shall in that paragraph means that's what has to happen, that it is a mandatory interpretation of that. Where the disagreement comes in is in the beginning of that statute, in the very beginning of the statute, where it says determination of permanent partial disability. The statute says that for all accidental injuries occurring on or after September 1st of 2011, permanent partial disability shall be determined using the following criteria. Then we go to Paragraph A. Paragraph A states that a report by a physician licensed to practice in all branches of medicine shall report the level of impairment. It says a physician preparing a report, it says a physician licensed to practice medicine in all of its branches preparing a permanent partial disability report. It doesn't say a report must be prepared and filed. But it says a physician preparing a report shall report the level of impairment. In effect, if a physician prepares a report, this is how it shall be prepared. I don't think the statute says if the report, and I think the structure of the statute itself doesn't say a report must be prepared, does it? A report will be prepared that shall report the impairment. The statute says that a report must be prepared and filed explicitly. It doesn't say a report must be prepared. It doesn't say one has to be submitted to evidence either, does it? Well, I think the structure of the statute and the legislative history does go to that. I mean, the statute does not explicitly say that. Well, I think if you move from saying, okay, just answering the question, does the statute explicitly say that a report must be introduced to evidence? The statute does not specifically say that. Thank you. Okay, go ahead. If there is a disagreement on the plain meaning of the statute, however, then you're going to move to the legislative history and, in my opinion, the structure of that statute itself. How do we get to a disagreement? How do we know if there is a disagreement? Well, apparently there's a disagreement now as to whether or not a report shall be prepared and shall be admitted. I think you look at the language, don't you? Correct. Okay, and first of all, to determine that, you all have to agree what the words are and agree what the words are. You have to identify an ambiguity before you get to the legislative plan.  Well, I think the ambiguity is in the paragraph saying that the factor shall be established and then you have the permanent partial impairment report as the initial factor to be determined. Are you in Section A or Section B now? In Section B. All right, well, let's stay with Section A. I mean, Section A introduces the impairment report, doesn't it? Correct, but the sentence prior and since the beginning of the introduction of the statute says that the permanent partial disability shall be determined as follows and goes to Section A, which initiates the report and a description of the report. It then moves to Section B, which states that the report is one of the factors to be determined. Let's stay with Section A, which you call initiates. Well, I think that's why it initiates. It is listed separately. It's not ignored. It's not put into just goes straight to Program B. It introduces the concept of a report, doesn't it, in A? Correct. And the language is what you read that's been drafted by the legislature. Is that ambiguous? I think that language in there is ambiguous taken in context with the second paragraph. So you're creating ambiguity in the language. Correct. But you can't do that. Well, I think it exists as ambiguous language because it uses the word shall. It talks about the report. It uses the report as the primary factor. What does it say, word for word? I don't know. If you'll excuse me. I mean, I'm impressed with your reading. No, no. And I have most of the words correct. It says a physician licensed to practice medicine in all of its branches preparing a permanent partial disability report shall report the level of impairment in writing. A physician preparing one. Correct. Was there one prepared? There was not. In this case, there was not one prepared. However, in the Continental Tire case heard by this court, a report was prepared, a report was put in. And the court held, this court held that the commission must review the report. Now we're into section B. We're into section B, however. And what did Continental say? That a report, that the commission had to consider a report. Because there was one prepared. Well, I don't know that it said because there was one prepared. It said that they had to review a report. And even though the report was a zero report, that still was a level of impairment. And the court said that they had to consider this level of impairment report. Because it existed. I don't think the decision says that if it did exist, we wouldn't have to consider it. We don't know what. That wasn't the fact. Those were not the facts. Well, now the facts are that there is not one. Now it is. There is. Now the facts are there was none prepared. Correct. There was not a report prepared. Okay. If you look at the purpose of the statute, the legislative history might change. Why would we do that under statutory interpretation? Because I think there's an ambiguity in the statute, in the introductory paragraph, when it says it will determine permanent partial disability shall be determined using the following criteria, and then they list a report. Okay. So I think that creates an ambiguity. That's your argument. Correct. So if there's an ambiguity, then you look to the legislative history, and you look to, in my opinion, this structure, which created the ambiguity. And the legislative history states that now we are having an impairment report. We're having a level of impairment reported by a physician. You know, if you look at the legislative history, during a period of time, a lot of amendments were being offered under the Workers' Compensation Act. There was a lot of compromises made. Are you aware that in the legislative history there were multiple times that amendments or that other bills were offered on this statute that explicitly required a report and were never passed? So if we're looking to determine the intent of the legislature, if bills were offered, voted on, and rejected that explicitly required a report, how can we say that their intent was to require a report in this statute that does not explicitly require one? I think that the discussion that went back and forth, and then the final bill that was passed in the discussion regarding this final bill, does indicate in the history that this final bill did intend to have that report be there. Because the comments themselves, the comments themselves say where. It doesn't say that. Other bills were introduced that explicitly said there shall be a report introduced into evidence. They were voted down in the same session of the General Assembly. But I think that the comments that were made after this bill was passed indicate that we're now going to have a physician-determined impairment. Well, those were made not in the judiciary, were they? They were not. Okay. They were not. And we have to look at the plain language of the statute. In addition to what other factors there are if there's that ambiguity that was created. We have to determine if there is one from the plain language of the statute. Correct. And my argument is that there was an ambiguity created by that first sentence in the introduction to the statute itself, that section itself, A. Correct. And then you're going to go and say the legislative history supports this interpretation of a requirement in A. Correct. Because that's the only place that it would exist or not exist is in the structure of the statute is in A. Correct. B just tells you what to do with it. B tells you what to do with it, but B also does say that the impairment report itself doesn't have to be explained. So it seems to give a more weight or more credibility to the impairment report in that it doesn't force the arbitrator or the commission to explain the impairment report in relation to the level of disability. I'm curious. B identifies various criteria for the commission to consider in coming up with a PBD award. Included in that is the age of the employee at the time of the injury. And the preparatory language in B is in determining the level of permanent partial disability, the commission shall base its determination on the following factors. And I indicated the age of the employee at the time of the injury is one of those factors. What if during the course of the hearing that that evidence is omitted? Everything else is provided in the record. If the commission provided for a PPD award, would that have to be reversed because there was no evidence of the employee's age at the time of the injury? I don't think so, because I think what you are in paragraph B now, you're determining the level of permanent partial disability. You're not determining whether they have one or not. So you're saying B does not provide for the mandatory nature of the impairment report. You're saying A does. Yes. Okay. Yes. Because when you look at the history of the way cases have been decided by the commission and the arbitrators and the factors that are in there, other than the impairment report, those are the factors that have been used generally. And the only thing added and changed in the statute is the impairment report itself. Those are generally the factors that have been used historically in determining the level of permanent partial disability. If the report is not mandatory, what was the purpose of this legislation? What did it change? Well, that's why I think it was mandatory. But I'm asking you a question. If the report is not mandatory, what does legislation change? Nothing. Should we interpret legislation to be meaningless nothing? No, that's why I think that the report was mandatory. I mean, I think this legislation and the wording of the statute requires that report to be there, or there is no change. But an impairment report had never been a factor before in B, right? Correct. Was it just a factor? I think the impairment report is a factor. I think that's listed in B. But A, as you just said, is not a mandatory factor to be considered. And that's within the structure of Paragraph B. So is the impairment report. Based on an introductory statement in Paragraph A, yes, I think it is. Well, what you want to argue is the petitioner must submit one of these reports. If they don't, they get no PPD, right? That's your argument. The party, yes. Even if the statute is interpreted as not requiring the filing of a report, it does change this. The employer can always submit one. And the employer's report that's submitted is based on the EMA guides. And then the commission must consider that. Correct. So that changes prior procedure, correct? Yes, that a report can be submitted by a respondent. And if it's submitted, it has to be under the EMA guides, and the commission must determine that. Yes, if it's submitted by a respondent, but the petitioner has the burden to submit it. And if he doesn't submit it, he gets zero in PPD. Correct. Why would he get zero if the employer submitted a report? I didn't say he would get zero. You just answered his question saying if the petitioner doesn't submit one, he gets zero. Correct. Assume the petitioner doesn't submit one, but the employer does. Why would I? I wouldn't. I wouldn't. Wait a minute. Whether you should or should not is not the question. If you did, then the commission could award him, even if you say this is mandatory, the commission could award him permanent partial disability based upon a report you submitted. I agree. If the respondent put in a report. So then your answer to Justice Stewart's question is just because a petitioner doesn't submit one does not mean as a matter of law he cannot recover permanent partial disability. He could if the employer submitted the report. What argument do you agree? Well, the burden of approving a permanent partial disability is on the petitioner. The statute requires an impairment report in my argument. In determining whether the fact has been proven, the commission can consider all evidence regardless of who puts it in. I agree. I agree. So if the statute says an impairment report is required. I think what you're saying is if the petitioner doesn't put one in and the employer doesn't put one in, there is no permanent partial disability. Correct. Just that simple. Correct. Okay. But if one is in, regardless of who puts it in, then the commission could award permanent partial disability. Yes. Just like they did in Continental Tire. Exactly. That's exactly right. Very good. You've gone a little bit beyond. We'd like to go beyond your time, and you'll have time to reply. Thank you. Counsel, you may respond. It pleases the court. Joshua Duffy, Howard Inc. on behalf of Mr. Smart. The opponent argues that Mr. Smart should not be entitled to get a permanency award because he did not put in an AMA report. The only case law that guides us. I don't think he's saying that he doesn't get a permanent partial disability because the petitioner didn't put it in. He's saying there's no permanent partial disability award because none was put in. That's a little different. That is correct. That is correct, Justice. So why do you believe that this statute suggests that a report is not required? That is because Illinois case law requires to look at a three-step sequential process to determine what the intent of the legislature was in this paragraph. That three-step sequential process is three. One, looking to the plain meaning of the statute. Two, looking to see whether this statute is mandatory or directive. And three, ultimately looking to see as to whether the penalty would be excessive. First, looking to see whether this statute, looking to the plain meaning of the statute. And we can look at the plain meaning of the statute in three ways. One, looking at the structure of the statute itself.  And three, looking to see what the intent of the act is altogether. As far as the plain meaning of the statute, plain meaning of the paragraph, the paragraph uses the word shall six times. As the appellate argues, the first and the fifth time that the word shall is used is no more important than the sixth time the word shall is used. The legislature in paragraph B lays out that there are five factors which it desires that the commission use to determine the level of permanency. However, in paragraph B, they use the word shall twice, both the fifth and sixth time, and they keep the word shall twice together in this fifth paragraph. Accordingly, at the same time that they say that they want us to look at the five different factors, they also confine those five factors that they are looking at to say that not one single enumerated factor shall be the sole determinant of disability. So the legislature, by putting both the fifth and the sixth shall in the paragraph B, is saying that there are times that there may be a time when a petitioner, because maybe for a tactical reason he doesn't want to put in one of the factors, or maybe another time because he's unable to put in one of those factors, that by not having one of those five factors to be considered, the commission is still able to render a permanency award, because to not would make it a sole determinant. And by not putting it, that sole determinant would be a zero-dollar permanency award. That is not what the legislature intended. Also, likewise, looking at paragraph B... You're losing me. The sentence reads, no single enumerated factor shall be the sole determinant of disability. Well, would we suggest that every injured employee has an occupation? He had an occupation when he was hurt, didn't he? Or he wouldn't be here. So that's a factor that will be in every case. The employer has future earning capacity. Assuming he's not a permanent total, he does. And the age of the employee at the time of the injury. He has an age when he was hurt, wasn't he? So every one of these factors, three of these factors, will be in every case. And if one determines that this is mandatory, that there must be a report, regardless of who puts it in, and then the legislature really says that that report is not going to be the sole determinant factor. Because the report... It occurs to me that if this report is not required, this statute is absolutely meaningless. It's a bunch of words. And we're right back to where we started from before. And it occurs to me that what the legislature was attempting to do here was put some guidelines into the award of permanent partial disability as opposed to resorting to a Ouija board, which is what the commission got to do before this. Let me respond to your two questions, Justice. First of all, I disagree with you that the other factors are not important. One... I didn't say they weren't important. What I said was no single factor, numerator factor, shall be the sole determinant of disability. You turned around and said that means that this is not mandatory or the report would be the sole determinant factor. And I said that's not true. Because there are three factors here that are going to be present every time there is a permanent total disability award. He has age, he has occupation, and he has future earning capacity. And I would disagree with you with that, Justice. Because one, what if you were dropped off at the orphanage at the beginning of your life and nobody had any records as to what your exact age was? What would happen if somebody, at the time that they tried their case, was at the same time pending a criminal action in court and you didn't know if you were going to be set free or you didn't know what your future occupation was? That's totally bizarre. So let's get to the language. No single immunity factor will be the sole determinant of disability. The intention of that sentence is very clear. They don't want this doctor's report to be the absolute statement as to what permanent parts of disability is. You consider other things. You consider his age. You consider his future occupation. You consider his ability for future earnings. But then the legislature goes on and says, in determining the level of disability, the relevance and weight of any factors used in addition to the level of impairment as reported must be explained in a written order. So these other factors are considered in addition to the report. And the prior sentence says that report is not going to be the sole determinative factor. You're going to have to determine the other. This business about people going to jail and going to an orphanage is nonsense. You were saying that these other factors could always be proved up all the time. And I'm giving you specific examples, Justice, as the times when in real life people have problems where they cannot prove something up. It could be that somebody post them being injured could be moving to Europe or moving to Mexico and we would not know potentially what their future. We know their age, or they could testify to their age, and we would know what their occupation was. We're always going to know what their occupation was at the time of their injury. By the legislature putting in B both the five factors that would be considered, but at the same time they also say shell. And that six-word shell is just as important as the fifth-word shell, that there are times when these five factors need to be considered that one of the factors may not be able to be put in evidence. For example, let's say somebody's caught coming off of a 19B hearing, but for tactical reasons they may want to convert it to a full hearing. They may not have time to go get the AMA rating, but because of the financial dire circumstance of the injured worker, maybe they don't have an AMA report at that time. Also, when you look at Section 5 of the Act, you will know that they could have put the AMA rating and kept it all in Section A instead of the definition section. But instead, when they use the AMA report, they make it one of five factors. Accordingly, when the legislature did the construct of how they put the statute together, they made the AMA report equal to all five factors by keeping it together in Paragraph B. It's important that when you read the statute and structure the statute together, that you read it all together as a whole and not pick out any of the particular word shell, as the appellant's arguing where he's saying, when he told me to look at the first and the fifth word shell, but taking it all together in its context, all read together at the same time, that six-word shell is very important. We know from black-letter law that there is no superfluous language in a statute. No single enumerated factor shall be the sole determinant of disability. That's what it says. There is no superfluous language there. The appellant's arguing that the AMA report was a threshold report that's required to have first, but the statute doesn't particularly say that. It doesn't say that there's a threshold report that's needed. All it says is that there's five factors that need to be determined and there to be no particular weight given to any one of those or more than the other. If you would say that any one of those factors, whether it's age, whether it's the AMA report, and if somebody doesn't have that into evidence, it actually makes it the sole determining factor, and there's no superfluous language, that's what the statute says. Ultimately, we need to look at what the underlying intent of the statute is, not just what this particular section says itself. Can I ask you a question? Yes. If an AMA report and a report is put into evidence and it gives a certain level of disability, isn't the commission entitled to reject that because of the person's age, because of their occupation, because of their future earning capacity, and make an award other than what the AMA report says? According to the statute, as long as they properly weigh what they did and write what they wrote as weighing it next to the other points. Yes, that's true. If so, then the report would not be the sole determining factor because it would be totally rejected, if there's a reason to reject it. But the question here is not whether the commission can reject it. The question here is, must there be one in the first instance? Is that a necessary predicate to the award of permanent partial disability, the existence of an award, a report, no matter where it comes from? That's the issue. Forget about this business about whether it's sole determining factor, not sole determining factor. It's not going to be the sole determining factor when you have other factors and it can be rejected. And that is why you need to look and follow the three-step sequential process as laid out by Illinois case law. Because after even you look at the plain reading of the statute, you then need to look at whether this is a directory or a mandatory statute. Let me suggest your analysis in the big picture that there's only one, always used to be only one. Now we have this sequential and all of this. You know why we have it? To reason back to a conclusion we've already made. That's why you have that three-step process? To put it another way, the three-step process is an amorphous concept that allows judges to do anything they want to do in any given circumstance. Right. The rule of law has always been if the statute is clear and unambiguous, it will be enforced as written, period, without any other aids of construction. For this particular statute, the concept that everybody has already said that you did not need an AMA report, it's clear that you do not need an AMA report. The only party that says that this was ambiguous is the appellate who has raised this for the fourth time here on appeal. However, according to case law, even if you say that you work backwards to get there, the case law still says that you need to determine whether it's mandatory or directive. Under case law, if there is no penalty in this section, it's directory and there is no consequence. Further, when you look to the statute as a whole, you can look at the statute as a whole in four ways to find or look to see if there's a penalty or consequence. One, there's only two other times in the statute that calls for using a reporter. That's for Section 12 and that's for Section 8.7, both pre- and post-2011 law changes. In both those cases, the legislature knows how to present a penalty if they want to. Likewise, the legislature knows if they don't want somebody to get money, Section 11, if you're intoxicated, if you're a criminal, if you are at a picnic or you're at a sporting event, you don't get compensation. But they didn't say if you don't put an 8.1b report in, you don't get compensated. 19L, 19K, those are sections of the actions that say this is a penalty. Again, it doesn't apply to Section 8.1b, you don't put in a penalty. Can I ask you a question? Yes. If, as you say, it's not mandatory to have a reporter, then what's the meaning of this legislation? What does it do? It worked exactly how it was supposed to work here. My client, who was 18 years and with a union job and the same job, did not go back to his former occupation. Probably could have been a 30% or 40% man as a whole case. What was he awarded here? 25% of a man. They were using the AMA report to try to get a baseline of disability. And that was to help bring down the level of permanency. Why the appellant didn't want to put in a report to help bring down the level of permanency, I don't know. That was his trial tactic. But now he's here before you for the fourth time after everybody said he did that in the AMA report. Counsel, if, as you say, it's not necessary to have this report, this legislation adds absolutely nothing to the law. Zero. It absolutely helps. Because in many circumstances, there may be an AMA report that's submitted. However, in this particular case, section 14. Counsel, prior to the passage of this legislation, was there any prohibition against introducing an AMA report on the part of either party? No. And maybe we used to call it section 12 reports. Exactly. So prior to this legislation, a person could introduce an AMA report. It wasn't incompetent evidence. And this report specifically says no single factor should be the sole determinant in disability. And if you didn't have to do it before and it's not the sole determinant factor, what does this do for our law? Nothing. It's a bunch of words. It provides another factor never seen before that the legislature is introducing. Wait a minute. Slow down. What factor was never seen before if you could introduce an AMA report if you chose to do it? Well, because they defined the report this time in section A. So before, they may have used it as a section 12 report. But now the legislature is saying, hey, if you are going to put this report in, we never had a definition of what a section 12 report was. But now in section 8.1A, they do tell us what this report looks like and how you're able to use it. So this legislation is nothing more than a definition? No. They're saying that now they're specifically saying that they want the determination of disability to be used by five factors. We never before had a definition of how we wanted disability to be used. Now they're saying we want it to be of five factors, that all stars equal weight. We're not exalting. They never said in this legislation that they're exalting the AMA report into a league of its own and its own special thing. They kept it in section B to say it's one of five factors, all of equal weight to begin with. Further, not only looking at the statute, but maybe not looking back. Excuse me, where does it say they're of equal weight to begin with? Because how they, how they define. Counselor, it doesn't say that. There's no place in this section where it says they're of equal weight. Is the man's age equal weight with what his occupation was? No. It just says they're five factors to be considered, one of which is a report, and none of them is determinative, solely determinative. It doesn't say they're of equal weight. They start out equally. What does it say they start out equally? It just says they're these factors. They're there. But if the legislature wanted to exalt the AMA rating to be its own special thing. Nobody said it, Counselor. Nobody said it was exalted. Nobody said it was to be exalted. That's not the issue in this case. The issue in this case is must there be one, period. Whether they accept it, reject it, around the corner, whether they think its occupation is more important, all the stuff you're arguing is not the issue. The issue is must there be one. Can you have permanent partial disability when no report is introduced by any party? That's the issue. So all the rest of this stuff is hoo-ha. The presumption is that the word shall, when used against the commission, is that shall is a directive. The shall is directory against the commission. We know that 25 years ago when Section 19b.1 was reviewed to say that a decision had to be rendered within 180 days, that that was not mandatory against the commission. It was only directory. Here, the legislation specifically says the commission shall base its determination. That's not the injured worker shall. That's not the lawyer shall. It says that the commission shall base its determination. And we already know the presumption that the commission shall, 25 years ago in 19b.1 was, that it was a directory statute. Now, maybe they were working back then, but we have case law that shows 25 years ago that the commission shall is a directory statute. Okay, counsel, I've equalized your time with the opponent's time, and you are out of time by about the same amount. Can I just sum up in one minute? Less than one minute. The third step of the process is, if you do find that this is mandatory, then you need to determine if Mr. Smart's conduct was that reprehensible as to deny him any recovery here. And I believe that this was not a mandatory statute. This was also directory. Mr. Smart did everything he was supposed to do and that the ambient report wasn't required. But for whatever reason, you would decide that it's mandatory. I would ask that you send this case back down to the commission and allow him to place in an 8.1b report on ProTonc. Also, I'd like just to add that this particular case has very significant legal issues, and I'd ask that you note that in your report to the Supreme Court. Every case is significant. Thank you, counsel. Counsel, you may have five minutes of your time. Briefly, I agree that the entire structure of the statute should be taken into account. I wasn't arguing that the specific words or portions should be picked out. And I also agree that there's no superfluous language. Assume that there's no superfluous language in a statute. And that's the exact point of my argument. If you look at the structure of the statute, and you look at the way it's set out, and you look at the fact that the impairment report is not just lumped into B, but is separate in a separate paragraph in the introductory sentence that says permanent partial disability shall be determined using the following criteria, that creates the ambiguity that gets you to the point of looking at the statute itself and determining whether or not the impairment report is required, regardless of how it gets into evidence, in order to determine permanent partial disability. Thank you. Very good. Counsel, thank you for your energetic arguments on this matter this morning. It will be taken under advisement, and a written disposition shall issue. The court will stand in brief recess.